Good morning, your honors. I'd like to begin by a correction. The government correctly points out in its brief that in the opening brief, we misidentified the impeachment material that the extrinsic witness was going to refer to. We misidentified that as the incident from the office of Bessard, where he allegedly threatened someone to burn their black arm off. That was corrected in the reply brief. In fact, that extrinsic evidence, that complainant, was going to testify about a racial stop. I apologize that correction was not made more clearly in the reply brief. Your honors, I think there are two issues that arise out of the suppression hearing in this case. The first is the disclosure or the lack of disclosure of OCC complaints relating to officer Bessard. The second is a confrontation clause violation by refusing to allow the defense to call a complainant an extrinsic witness to testify about the bias of officer Bessard. I'd like to begin with the disclosure of the OCC complaints because I think this problem involves important policy concerns that this court need address. My client, Mr. Corbin, was caught in an interstitial area, an area not well covered by Ninth Circuit authority. If he was facing a case, a federal case, where federal agents were testifying against him, this court's authority is clear under Henthorne that the federal government would have an obligation to search for and to disclose personnel files that would be valuable as impeachment materials against the federal agent. If this was a state case and it was state officers who were testifying against Mr. Corbin, there was California authority, the Pitches case, and the California Rules of Evidence, which make it clear that disclosure is mandated. But what we have here, your honors, is a hybrid case. It is a case that's part of an increased federalization of state offenses in the federal system. We have a case that is essentially, at heart, a state case. The case was made by state officers. It involves really a state offense. And it was state officers that came into federal court. And there is simply no authority, there is no structure that has been set up by this court to deal with that situation. Henthorne doesn't apply for, as my opponent will concede, that he had no control over the personnel files of this state officer, Officer Broussard. And of course, the California Rules of Evidence and Pitches don't apply, for we were in federal court. What are you driving at? What are the implications of what you're saying? Your honor, the implications are that I think that, regardless of how this court determines on whether the OCC complaints should have been determined, that we do need some guidance on procedure necessary for this increasingly common situation. For example? For example, your honor, in every case where there's a state agent that appears in federal court for a suppression hearing, what is the procedure by which the defense can obtain what is characterized as Brady or bagging material? How does the defense obtain federal giggling material when there's a state officer that comes into federal court? Well, how does it? Well, in this case, your honor, we obtained it through a Rule 17c subpoena. Did that work? No, your honor, it did not. Why not? Because, although the materials were disclosed to the court, and I would like to of the subpoenas, all of those materials were not disclosed to the defense. That became a federal problem, not a state problem, right? Well, your honor, it was certainly a problem for... The judge was the one who decided that they didn't have anything to do with your case, federal judge, nothing to do with the subpoena or the people who provided it. Your honor, my question is, employing what standard? Because it is clear that there is a Henthorne Giglio standard that attaches to the federal government if it has in its possession impeachment materials. And there is the analog in the state court. But there is no clear analog when state materials are subpoenaed through a Rule 17c subpoena. Well, but the court's under the, under the thumb of these same cases and same principles once it gets the materials, isn't it? That is the question, your honor. Is the district court under a Bagley-Brady review standard, or... Why wouldn't it be? Well, it's not, it wasn't in the possession of the federal government, your honor. And that is the question. A Rule 17c subpoena... Well, what did you ask the district court to do once it got this material? I asked them to disclose the materials twice, your honor. I asked them to disclose them initially, and then I provided, as the court has seen, several hundred pages of materials illustrating Officer Passar's misconduct. And then I asked again, under two evidentiary theories, 608B... I'm not sure what your problem is. What, what, what misfired here? I'm sorry? What misfired? What's the problem? What misfired... You didn't get stuff. The district court exercised some kind of authority under the case law and said some of this is material, some of it isn't. What misfired, your honor, is I'm not aware of what standard the court used to evaluate that. Did you ask the court? I did, your honor. I asked under both 608B and Bias that I posited that those materials... How did the court explain its decision to give you some and not the rest? Your honor, it based it on several different theories. Some it said did not go to Bias. Others it said it precluded under a 403 analysis. But I said I never saw the complaints. And so I had no way to evaluate or to argue in an adversarial context that they were relevant. Are you saying that federal law should enable you to take a look at all of them? Is that what your argument is? No, your honor. I say that my suggestion is that federal law should clearly articulate a standard for the district court to evaluate those materials akin to the Henthorne-Giglio line of cases. What standard do you suggest? Well, your honor, the court has suggested a Bagley standard. I think that standard may not be inappropriate. I'm not sure if that was a standard used in this case because I have no way of knowing what complaints were in fact provided to the district court. I do have a good faith basis based on... So, from my understanding, I thought I understood until you started talking. I thought you were objecting to having the district court looking at the materials at all. You think they should have just been handed over by the prosecution. That's not your position. Your position is that the district court can look at it and make a decision? That's correct, your honor. Okay, so you concede that? Correct, your honor. Okay, so having conceded that, what is your objection here? I'm still not getting it. Well, your honor, first I'd like to emphasize that I will concede that the prosecution, that is the federal prosecution in this case, had no obligation to disclose these state materials because they were not in its possession. We therefore issued a Rule 17c subpoena. Those materials were returned to the court without opposition. What difference does it make? You got the materials were turned over, so you are now raising an issue in a case that's not before us. This would be a nice issue to preserve for a case where the state says we're not going to turn them over. We don't feel like it. Nyah, nyah, nyah. Then you'd have an issue. And if the judge doesn't order them turned over anyway, then you have an issue for appeal. But this didn't happen here. The state authorities, the fact that they were state authorities turned out to make no difference at all because their materials were turned over. So why are we talking about this? Your honor, the focal point of my argument is not that they were disclosed over. It's the evaluation of those complaints and whether I was entitled to them or not. Okay, so you have no beef with the turning over. You have no beef with having the district judge filter them. I mean, there were personnel who found materials. But anyway, you don't have an objection with that. Your problem is the standard the district court applied. And that gets us back to Judge Hart's question. Did you tell the district courts what standard you wanted it to apply in filtering the materials? Your honor, I did not articulate the Brady bag Why isn't that waived? Your honor, I did articulate the bag. Presumably, the district judge knows what to look for. I can't imagine what other standard the court would look for. Would it look for whether or not they're Brady or Giglio and also whether there is some sensitivity because they're... And the court said it was applying the four or three standards or some of them. That's right, your honor. So given that you didn't make the raises issue below, you didn't identify a problem with the court's standard of review, why are you entitled to raise it here now? Your honor, I think I did fairly preserve that issue because I did, in fact, on December 28th of 2001, filed a brief, which is in the excerpts of the record, where I articulate the 608B theory and the bias theory for why I believe those materials are relevant impeachment Giglio materials for the defense. You gave that to the district court? I did, your honor. Do we have any reason to believe the district court didn't pay any attention to that? No, your honor. Your honor, I note that my time is almost up. I'd like a minute. A bit of time for rebuttal, thank you. Okay. You're asking us to look at the material that was withheld. I am, your honor. We don't have that. Did you take any steps to have that transmitted to us? I didn't, your honor, because it was my understanding that the court of appeals would receive those materials as part of the district court record. And in fact, I received notice from the clerk, the appellate clerk, that those records were retained and produced to the court. And so perhaps that was my error. But I received records from the Ninth Circuit clerk that says that the district court file, including those sealed records, were produced to the court. As far as I know, we don't have them yet. We got some more stuff yesterday. We did? Yeah, but we don't have it in our hands. It's in our chambers. So do I. I'd like to say my time for rebuttal. Okay. You're here for rebuttal, ma'am. May it please the court, my name is Chris Dusko and I represent the United States. I'd like to begin by addressing the issue raised by defense counsel. And I would suggest to the court that what happened in the district court was not novel and it is well supported by this court's precedences, precedents. What happened was that the defendant, knowing that he had state officers who would be witnesses at a suppression hearing, asked the district court to issue a Rule 17 subpoena seeking essentially personnel records relating to those witnesses. I believe that the defendant's request and the subpoena was filed under seal by the district court on September 6th of 2001 and should be part of the clerk's record at 19 and 20. And you will see if you look at that subpoena that what the defendant requested the district court to do was to conduct an in-camera review of the documents before disclosing them. So it was common ground before the district court between the in-camera review by the district court and then a determination by the district court whether or not the materials were Brady or Giglio. And that procedure is well supported by this court's authorities. It's the procedure that the court authorized in Henthorne and then again in Cadet. Now the defendant's argument that somehow we're in a gap where there is no law in the area is incorrect because Henthorne and Cadet were based upon the due process principles at issue in Brady. And the due process clause applies to the records that are in the possession of the state as well as to the records in the possession of the federal government. So at issue here is the application of the Brady principle that the defendant's entitled to any documents that have impeachment value or are exculpatory. And that's the standard the district court applied. When you have a case like this involving a state officer, let me back up a bit. When there are issues raised as to the credibility of the federal officer based on some kind of allegations of racial bias or whatever, do you have routine access to the personnel records of the federal agencies that might be involved, the EA or the FBI? The DOJ policy is to send what we call a Henthorne letter to the agency at issue asking them to review the files and to provide to the prosecutor any documents that are remotely look like Brady material. So you get the whole pile? We get whatever is in that personnel file that has anything to do with credibility or could be exculpatory in any manner. So you see in a federal case what you didn't see in this case because it's a state case? Our policy with respect to state agencies is when we interview the witnesses, we do ask them the question of whether or not there's been any legal or administrative determination that they were incredible, any credibility findings that went against them. We have an oral colloquy with the witness at that time. So with your federal witnesses, you have an opportunity to make a judgment of your own as to whether this officer is credible or not based on all of this stuff. And if you were to find a file nine feet thick convincing you that the officer for some reason was biased against a person because of that person's race, you could decide not to use that officer or file that case, couldn't you? That's correct. Could you simply do the same thing with respect to your use of state officers? I mean, they routinely appear now in federal cases. What would happen if you went over and said to the state agency, for example, in this case, we'd like to see the personnel files the way we see the personnel files in federal cases? Would they show them to you? No, Your Honor. And the reason, and I think it's important to point out, is the reason is that under California law, those files are confidential. And the relevant provision is California Penal Code Section 832.7a, which says that the personnel files of officers and later on in the penal code it says that citizen complaints of officer misconduct are part of the personnel file. Those are confidential. Could you seek a waiver from the officer? I don't believe so, Your Honor. Why not? My understanding is that, I mean, the confidentiality provision, frankly, Your Honor, I've never tried, so I don't know. But my reading... Might that be an important, might that, might not that be an important thing to consider in a case where you have credibility of witnesses at issue? I mean, you do that in federal cases. In state cases, they walk across the street and there appears to be no attempt for you to take a look at it. We're flying blind here. We don't know what we're talking about. Of course, we presume the good faith of the district court in looking at all this kind of stuff. But it seems to me that it might be a good idea for the federal government to take a I think there are limitations on the ability of the federal government to look at personnel files of federal officers. Well, you might not want to file a case if the officer says, I'm not going to let you look at my personnel file, and the other side is jumping up and down yelling, this guy is a real problem officer. The precise answer to your question, Your Honor, is I don't know if the federal, if the state officer can allow the federal government to have access to those files, because it's not only the confidentiality of the officer at issue, but also that of the complainant. Here, what the defense sought were complaints by citizens against the officer. And my reading of the state law is that that's, those complainants' identities are confidential as well. And what the state law says is that that should not be disclosed in any criminal or judicial civil proceeding unless the requirements of state procedures are followed. And those state procedures are what's commonly called the Pitches Motion. Right. Which is the state analog to obtaining Brady material. Well, could you somehow wander through a Pitches Motion on the state side to get this stuff? I don't know if a state court would have jurisdiction to do that. I mean, what typically happens in these cases, and I do think it's the most efficient way, is the defense files a Rule 17 subpoena and asks for all the documents they want and has it returned to the district court for its in-camera review. Because if the government obtained the files on its own, then all it would do would be exactly the same, which is to give it to the district court if it had any question about it. So you get a whole bunch of files from the state court, right, that can't be revealed because of all kinds of state law stuff. And it comes over to federal court. As far as I can tell, the district court unloaded a whole bunch of this stuff onto both of you. It's not going through any Pitches review. The district court reviewed the files. And I do, I don't think the court's willing to Is all the stuff that was turned over the same kind of stuff you just described is not subject to release by state agencies because of all the rules involving the confidentiality of complaints as well as officers? That's right, Your Honor. So the federal court got it and just said, here it is. The federal court did a Brady review and under the due process clause made the determination that the defendant's due process rights were at issue and therefore turned them over. So Under Kyle's v. Whitley, why don't you have an affirmative obligation to go looking for this kind of material? This court has held that the federal government has no affirmative obligation. The federal agencies have no affirmative obligation to obtain documents that are in possession of the state. Counsel, in this case, there was material turned over, which did certainly raise some questions about whether or not to allow that to be used either in cross-examination or in calling an additional witness or two. What should we do with that? Your Honor, I think what that says is two things. First, it says that the court applied a very liberal standard when deciding what to turn over because the documents that it did turn over were not admissible evidence, nor did they lead to viable impeachment evidence. So the court turned over anything that bore on bias or that bore on credibility, regardless of its ability to be used as impeachment evidence. So that's the first point I would draw from that. The second point is you have to look at the district court's evidentiary decisions one by one, and you'll see that what the court was concerned with was that there's a lack of foundation for any of the allegations. For example, the testimony of Mr. Mitchell would have been that he was stopped for no reason by Officer Bessard, and he believed that the reason he was stopped was his race. However, he had no factual basis to make that claim. So if he were called as a witness, all he could conceivably testify to based upon his personal experience was that Officer Bessard stopped him. He didn't believe he had, and he didn't believe Officer Bessard had a reason to stop him.  Let's suppose that the files revealed there were 20 Mr. Mitchells who had claimed that they were stopped for no reason at all. Don't you begin to get to a point where you consider that to be independent corroboration? I understand all of the problems, but I also don't think we've necessarily found the solution. I see your point, Your Honor, and I do think that if there's a pattern of conduct that becomes slightly different, I think you need to look at each allegation, whatever that allegation might be, to see what the foundation is. The problem here is that there is simply no foundation, no evidence of racial bias with Mr. Mitchell. Now, if you had several complaints all the same, I don't think my analysis would change because it's not uncommon for citizen complaints to be filed against active police officers who are making arrests. It's every active police officer who's active in the street has citizen complaints by people who are arrested by that officer. So I think it's particularly important in this context to apply this Court's standard in United States v. Wray and look for some foundation for the allegation before allowing it to be the fodder of cross-examination. Thank you. Thank you, Your Honor. You have a minute left for rebuttal. Thank you, Your Honor. Your Honor, I think that Judge Trott has hit exactly the point that I am trying to drive home, and it is my experience that in response to a Rule 17c subpoena by the defense, these materials are routinely and automatically disclosed to the government simultaneously, which I think vitiates the argument that there is some sort of privacy concern by the State of California that precludes disclosure to the federal government. Now, I'm frankly unaware whether these were disclosed simultaneously to the Court and to the government in this case. Well, you know, it may be that it would behoove the government to look at these things first, but, you know, it's not their decision. If they want to put the witness on without looking at the materials and then be surprised when they learn there's all sorts of bad stuff about the witness, isn't that their bad? So much the better for the defense. They get the drop on the guy after the government has decided to rely on him. I don't see where you have a cognizable claim on behalf of the defendant. Your Honor, that's true. That was a strategic decision. You got everything you could have gotten under Brady by issuing the subpoena. You know, you have a dispute as to whether the District Court applied the right standard, but presuming the District Court applied the right standard, Brady and Giglio, what really is your complaint? I'm still not getting it. Your Honor, presuming that the Court applied the correct standard, I have no complaint as to the OCC complaints. And you are correct. They made a strategic decision. So it really gets down to the question of whether or not you made this request in a timely fashion, the District Court applied Brady and Giglio, and whether, if we look at the record, we have any reason to doubt that the Court did what you asked it to do. Exactly, Your Honor. And I would refer the Court to the excerpts of record. Is there anything the District Court said in its order at any other time that would cause us to doubt that it applied the law correctly? Yes, Your Honor. I think that the Court's treatment of the extrinsic witness, Kirk Mitchell, in the Confrontation Clause issue that Judge Fletcher mentioned, illustrates that there was a misunderstanding of— But that was not at the turning over stage. That was at the use of evidence stage. That's a different issue. I mean, this is material that the Court did turn over after looking at it. So by hypothesis, it must have been—and then it chose not to allow it to be used. So by hypothesis, the standard applied in selecting what to turn over must have been broader than the standard applied when deciding what material is going to be used in impeachment. Otherwise, you'd never have seen it, right? So let me ask you once again. Is there anything that the District Court said, or is there anything else in the record that would cause us to doubt that the United States District Judge performing his functions in the normal course failed to apply the law correctly? No, Your Honor. I arrive at a different hypothesis from the example I posited. My hypothesis is that the judge's misunderstanding of the disclosure of the extrinsic evidence, or the permission to use extrinsic evidence with Kirk Mitchell, illustrates a misunderstanding of the responsibilities— But he turned it over. I don't understand how you can make that argument. The only reason you have this argument is because the District Judge looked at it and said, yes, this is something we ought to turn over to the defense. So obviously, the District Court's—whatever its error was or not in allowing you to use impeachment—obviously, it was not applying the same standard at the turning over stage, if it did, you would not have seen it. Must that not be logically true? It is true, Your Honor. However, I view the confrontation clause problem that we had as illustrative of a broader problem in the analysis of the sealed reports, which I have not received, nor has this Court. And my sole request as to the OCC complaints is to review them applying whatever standard is appropriate. Well, I understand. That's not an issue. If you are challenging the District Court's exercise of, we'll look at them, and there's no other way of reviewing them. But I thought you were also arguing that regardless the District Court applied the wrong standard, we have to do something else. No, Your Honor. I'm asking for review. Okay. Good enough. Thank you. Case resolved. You will stand submitted.
judges: B. Fletcher, Kozinski, Trott